```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KUO R. CHIANG,                                   :
                                                 :
                        Plaintiff,               :
                                                 :
      -against-                                  :      12 Civ. 3598 (HB)
                                                 :
PATRICK R. DONAHOE, Postmaster General           :      OPINION & ORDER
of the United States Postal Service,             :
                                                 :
                        Defendant.               :
------------------------------------------------------------X
```

**Hon. HAROLD BAER, JR., District Judge:**

      Plaintiff Kuo Chiang brings this action for retaliation under Title VII, 42 U.S.C. § 2000e *et seq*. Defendant Patrick Donahoe moves for summary judgment. For the reasons stated below, Defendant's motion is GRANTED.

## BACKGROUND

      Plaintiff is a United States Postal Service ("USPS") driver based out of Gracie Station in Manhattan's Upper East Side. At the start of each workday, Plaintiff picks up his postal truck at FDR Station, thirty-two blocks south of Gracie Station. Plaintiff's typical daily assignment then involves delivering express mail in the morning, followed by delivering bags of mail to relay boxes along foot carriers' routes. Plaintiff is responsible for dropping mailbags at fifty to sixty relay stops along his assigned route. Usually, at the end of the day Plaintiff then returns his truck to FDR Station.

      USPS pays Plaintiff by the hour. But Plaintiff earns time-and-a-half for any hours worked between eight and ten hours in one day. And if Plaintiff works beyond ten hours in a day, he receives additional "penalty overtime" at the rate of twice his normal hourly wage. USPS distributes overtime based on employees' positions on the Overtime Desired List ("ODL"). Employees list themselves on the ODL to signal that they are available for overtime assignments. The ODL is arranged by seniority and drivers are called in for overtime off the ODL on a rotating basis. And as required under the agreement between the National Association of Letter Carriers ("NALC") and USPS, USPS is to ensure that overtime is distributed "equitably." (*See* Chiang Decl. ¶ 30 & Ex. G.)

In 2006, Plaintiff filed a race discrimination complaint against his employer with the Equal Employment Opportunity Commission ("EEOC"). While that complaint was eventually dismissed, a jury later found in August 2010 that Plaintiff had been retaliated against for complaining about race discrimination. And after this liability determination, USPS settled with Plaintiff for $185,000 in October 2010.

Plaintiff now identifies multiple incidents that he argues were in retaliation for his successful lawsuit and for additional complaints to the EEOC following that lawsuit. As indicated below, many of Plaintiff's concerns arose nearly a year or more after the conclusion of his lawsuit in 2010. First, on the morning of May 28, 2011, Plaintiff requested one hour of annual leave to be taken that same day. This request was denied, purportedly because of a shortage of drivers on Memorial Day weekend. The record makes clear that this was an exception since all other leave requests after his lawsuit have been granted. Second, on July 11, 2011, Plaintiff was directed at the end of his tour to leave his truck at Gracie Station rather than return it to FDR Station. This deprived him of approximately thirty minutes of overtime—the time it would have taken to return the truck—and saved his ailing employer a few dollars. Nonetheless, like the denial of annual leave, this was the only time since his first lawsuit that Plaintiff was instructed not to return his truck to FDR Station. And in August 2012, Plaintiff filed a union grievance because an ineligible driver may have worked two hours of overtime on July 28, 2012. Plaintiff's supervisor claimed that the overtime records were mistaken, and deleted this overtime entry. As a result, Plaintiff received no compensation for these two hours.

In addition to these slights, Plaintiff points to other instances that he claims affected his overtime. In June 2011, Ladonna Hutchins, one of the foot carriers on Plaintiff's route, asked that Plaintiff not deliver mail to her relay boxes. According to Hutchins, she feared retaliation from Plaintiff for her trial testimony against him during Plaintiff's prior action. (*See* Trexler Decl. Ex. K, at USPS 01208.) For example, at one of Hutchins's relays, Hutchins claimed that Plaintiff had previously dropped mail for her inside one of the buildings along her route. (*Id.*) But after the trial, Plaintiff refused to continue dropping Hutchins's mail inside that building. (*Id.*) And on June 13, 2011, USPS removed this relay drop from Plaintiff's route. This shortened Plaintiff's daily route by approximately 20 minutes, potentially affecting overtime opportunities. After Plaintiff complained, his supervisor suggested that reassignment of the relay be conditioned on Plaintiff agreeing to resume dropping mail inside the building. Plaintiff

refused, citing security concerns. On October 1, 2011, he also wrote to his manager, James Warden, that he viewed the instruction as "[h]arassment and [d]iscrimination." (Chiang Decl. Ex. C.) Nevertheless, the relay was not reassigned to him.

Plaintiff also urges that he was inequitably assigned overtime in the first quarter of 2011. He points to the assignment of overtime to Chung Lu, another driver at Gracie Station. By Plaintiff's calculations, Lu worked nearly 57 hours of overtime over the first three months in 2011. (Chiang Decl. Ex. F.) Lu was not on the ODL list and therefore should not have been assigned overtime. But there is no evidence that Plaintiff complained about the assignment of overtime to Lu until this lawsuit. Instead, Plaintiff admits that he prepared information regarding Lu's inequitable overtime only following discovery. (Chiang Decl. ¶ 24.)

And on December 17, 2011, one of Plaintiff's supervisors, Mildred Brown, failed to notify Plaintiff of an eight-hour overtime assignment to be performed on December 19. Brown had testified against Plaintiff at his first trial. Because Plaintiff was unaware of the assignment, Plaintiff did not perform overtime that day. Plaintiff also points to seven hours of overtime that he was owed following a union grievance that was decided in his favor. Plaintiff filed that grievance on April 9, 2012 for overtime he should have earned in the fourth quarter of 2011. Two months later on June 1, 2012, the dispute resolution team determined that Plaintiff was entitled to seven hours of make-up overtime in the third quarter of 2012. But according to Plaintiff, USPS never offered those hours to him.

Plaintiff was also involved in a number of disputes with a fellow USPS driver, Harkeim Wray. First, on November 23, 2011 and again in January 2012, Wray and Plaintiff argued over the use of a wheeled palette, or skid, used to transport mail bags in Gracie Station. After the first conflict, a supervisor provided a second skid to Plaintiff. And after the second incident, management instructed Wray not to return to FDR station that day to avoid further confrontations. In December 2011, Wray also asked Plaintiff how much money he was planning to give his supervisor for Christmas. According to Plaintiff, Wray further commented that he did not care if Plaintiff complained about Wray's work habits or his use of Plaintiff's skid. Plaintiff took this conversation to imply that he should pay his supervisor for better treatment. But Plaintiff acknowledges that since the January 2012 incident, he has not had any other issues with Wray. (Pl.'s 56.1 ¶ 37.)

## DISCUSSION

"A motion for summary judgment may be properly granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2)). In analyzing summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990)).

At summary judgment, Title VII retaliation claims are subject to *McDonnell Douglas*'s "familiar burden-shifting approach." *Kaytor*, 609 F.3d at 552 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). To establish his *prima facie* case at *McDonnell Douglas*'s first stage, Plaintiff must show "(1) that [he] participated in an activity protected by Title VII, (2) that [his] participation was known to [his] employer, (3) that [his] employer thereafter subjected [him] to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action. *Id.* If Plaintiff establishes a prima facie case, the burden of production shifts to Defendant "to proffer a legitimate non-retaliatory reason for the adverse employment action." *Id.* at 552–53. To avoid summary judgment, Plaintiff then must point to evidence sufficient to permit an inference that retaliation was a but-for cause of the adverse employment action. *See Brooks v. D.C. 9 Painters Union*, No. 10 Civ. 7800, 2013 WL 3328044, at *4 (S.D.N.Y. July 2, 2013) (third stage of *McDonnell Douglas* requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer" (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013))).

### A. Material Adversity

The purportedly adverse actions here just do not measure up and cannot support a Title VII retaliation claim. To demonstrate material adversity, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of

discrimination." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 698 (2d Cir. 2012) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

First, USPS's one-time denial of a single hour of same-day annual leave falls far below the threshold for material adversity. *See id.* at 699 ("one-time refusal to give [plaintiff] a half-day off for a doctor's appointment" not materially adverse). Similarly, the one-time directive that Plaintiff not return his truck to FDR station—which resulted at most in a deprivation of thirty minutes of overtime—is also not materially adverse. *Williams v. NYC Hous. Auth*, No. 05 Civ. 2750, 2006 WL 229187, at *9 (S.D.N.Y. Jan. 31, 2006) (no materially adverse employment action for "the loss of annual leave and overtime for not working two days . . . and the loss of undefined compensated days"), *aff'd in part, vacated on other grounds in part*, 211 F. App'x 22 (2d Cir. 2006). One cannot help but begin to wonder: Is this a valid Title VII action or a personal vendetta against this USPS station and its dedicated staff?

In the same vein, the two hours of overtime that one of Plaintiff's colleagues worked on July 28, 2012 for which Plaintiff was not compensated is similarly minimal. *See Sulehria v. City of N.Y.*, 670 F. Supp. 2d 288, 315 (S.D.N.Y. 2009) (plaintiff failed to demonstrate material adversity based on "failure to honor his overtime request during a one-month period"); *Merritt v. N.Y.C. Transit Auth.*, No. 06 Civ. 5548, 2008 WL 4508258, at *5 (E.D.N.Y. Sept. 30, 2008) (classifying cancellation of two hours of overtime as "too minor to be actionable" (citing *Gentile v. Potter*, 509 F. Supp. 2d 221, 239 (E.D.N.Y. 2007))). And Plaintiff offers no evidence that he should be credited with those two hours exclusive of all other drivers on the ODL list. Indeed, the evidence indicates that in cases of inequitable overtime assignments, the "fair amount of overtime" to be awarded is calculated on a prorated basis among all eligible drivers. (*See* Chiang Decl. Ex. G.) Given that Plaintiff therefore would have received at best a prorated portion of the two hours of errant overtime, this incident is not sufficiently adverse to support Plaintiff's claims here.

Finally with regard to overtime, I turn to USPS's failure to notify Plaintiff of an eight-hour overtime assignment on December 19, 2011 and the alleged failure to offer Plaintiff seven hours of makeup overtime following a 2012 union grievance. But like Plaintiff's other overtime claims, none of these overtime denials, either individually or taken together, would have deterred a reasonable worker from engaging in protected activity. *See Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP*, 491 F. Supp. 2d 386, 400 (S.D.N.Y. 2007) (describing

twenty-four hour average overtime decrease from previous year as "a small fluctuation . . . hardly sufficient to make a showing of an adverse employment action"). Indeed, during the same period following his 2012 grievance, Plaintiff admits that his overtime hours were in "the middle toward the upper" of all drivers—even without these assignments. (Chiang Dep. 125:18–22.) These circumstances do not demonstrate material adversity. *See Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 572 (2d. Cir. 2011) ("Individually the actions were trivial, and placed in context they remain trivial."). As Thoreau wrote and these claims underscore, "[o]ur life is frittered away by detail." Henry David Thoreau, Walden 119 (Thomas Y. Crowell & Co. 1910) (1854).

Nor was Harkeim Wray's treatment of Plaintiff or management's response to that treatment materially adverse. It is well-settled that Title VII is not a "general civility code" and that "petty slights, minor annoyances, and simple lack of good manners" are not actionable. *EEOC v. Bloomberg L.P.*, No. 07 Civ. 8383, 2013 WL 4799161, at *18 (S.D.N.Y. Sept. 9, 2013) (quoting *Burlington N.*, 548 U.S. at 68). First, the two conflicts involving the use of a skid were not materially adverse. Plaintiff was not deprived of the use of a skid and management defused any further confrontations by providing a replacement skid to Plaintiff and instructing Wray not to return to FDR station. These two minor incidents as well as Wray's negative comments to Plaintiff on one other occasion are just such personality conflicts that courts have found are not actionable under Title VII. *Burlington N.*, 548 U.S. at 68 ("'[P]ersonality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable . . . .'" (quoting 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 669 (3d ed. 1996)) (internal quotation marks omitted)); *Tepperwien*, 663 F.3d at 571 ("[I]ncidents where [supervisor] publicly yelled at [plaintiff] for various reasons or called him 'shit' . . . constitute, as a matter of law, the sorts of petty slights and personality conflicts that are not actionable." (alterations in original) (quoting *Martinez v. N.Y.C. Dep't of Educ.*, No. 04 Civ. 2728, 2008 WL 2220638, at *12 (S.D.N.Y. May 27, 2008))). Given that Plaintiff has not had any further incidents with Wray, these isolated incidents do not amount to actionable retaliation.

### B. Inference of Retaliation

And even assuming a *prima facie* case regarding Plaintiff's speculative assertions that he might lose overtime due to the permanent removal of Hutchins's relay from his route, Plaintiff fails to rebut Defendant's legitimate reason for that removal. Indeed, Plaintiff does not dispute

that his supervisor offered to reassign Hutchins's relay to Plaintiff so long as he agreed to resume dropping off mail inside the building at which the relay was located. But Plaintiff refused this offer. And Plaintiff points to no evidence that refusing to reassign the relay unless he followed his supervisor's instructions was pretextual. Accordingly, Plaintiff's claim regarding this relay assignment fails. *See, e.g.*, *Oluyomi v. Napolitano*, 811 F. Supp. 2d 926, 949 (S.D.N.Y. 2011) (legitimate reason shown where plaintiff "failed to follow her supervisor's instructions" (citing *Redd v. N.Y. State Div. of Parole*, No. 07 Civ. 120, 2010 WL 1177452, at *10 (E.D.N.Y. Mar. 2, 2010))). While Plaintiff urges that there were security concerns with placing mail in the building, it is not the Court's role to second-guess USPS's business judgment and their determination that the drop was appropriate. *See Yu v. N.Y.C. Hous. Dev. Corp.*, 494 F. App'x 122, 125 (2d Cir. 2012) (noting that the Court does not "act as a 'super personnel department' that second guesses employers' business judgments" (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001))).

Further, Plaintiff's claim that he was inequitably assigned overtime in the first quarter of 2011 also fails at the final *McDonnell Douglas* step. To the extent Plaintiff points to receiving fewer than the average number of overtime hours during that period, Defendant explains that Plaintiff took three weeks of leave during the same quarter. There is no evidence suggesting that this was not the actual reason he received 18 fewer overtime hours than the average driver during that period. Nor does Plaintiff identify evidence that the errant assignment of overtime to Lu was retaliatory. Plaintiff was not directly denied compensation for that assignment because there is no evidence that he filed any grievance seeking compensation. And to the extent that some of Lu's overtime hours should have been assigned to Plaintiff, those hours also should have been assigned to many other drivers on the ODL list. Because the assignment of overtime to Lu affected all ODL drivers equally and Plaintiff offers no evidence of retaliatory animus, his claim cannot survive summary judgment. *See Chin-McKenzie v. Continuum Health Partners*, 876 F. Supp. 2d 270, 287–88 (S.D.N.Y. 2012) (rejecting retaliation claim where action affected all employees and "there is no evidence that this action was directed specifically at [plaintiff]").

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is instructed to close this motion, close this case, and remove it from my docket.

**SO ORDERED.**

Date: 10/23/13
New York, New York

HAROLD BAER, JR.
**United States District Judge**